**JUDGE BATTS**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

11 CIV 7356

| | |
|---|---|
| DONY LIMARVIN and DARWIN LIBERTTO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>EDO RESTAURANT CORPORATION, SHODAN INC. and KENJI HIGUCHI, Jointly and Severally,<br><br>Defendants. | Civ. Action No. _____<br><br>**CLASS & COLLECTIVE ACTION COMPLAINT** |



RECEIVED OCT 18 2011 U.S.D.C. S.D.N.Y. CASHIERS

## NATURE OF THE ACTION

1. Plaintiffs DONY LIMARVIN ("Limarvin") and DARWIN LIBERTTO ("Libertto and, collectively with Limarvin, "Plaintiffs") allege, on behalf of themselves and all other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are entitled to: (i) unpaid wages from defendants EDO RESTAURANT CORPORATION, SHODAN INC. (collectively with Edo Restaurant Corporation, the "Corporate Defendants"), and KENJI HIGUCHI ("Higuchi" and, collectively with the Corporate Defendants, the "Defendants") for worked performed for which they received no compensation at all; (ii) unpaid wages for overtime work for which they did not receive overtime premium pay, as required by law, and (iii) liquidated damages, costs and attorneys fees pursuant to the FLSA, 29 U.S.C. §§201 *et seq*.

2. Plaintiffs further complain, on behalf of themselves, each opt-in plaintiff, and a class of all other similarly situated current and former employees of Defendants, pursuant to

1

Fed.R.Civ.P. 23, that they are entitled to: (i) wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by New York Labor Law ("NYLL") §§ 650 *et seq.*, including Part 142, § 142-2.2 ("Overtime Rate") of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act (Article 19 of the NYLL); (ii) compensation for days worked in which Plaintiff and the class worked in excess of ten hours and/or a split shift and did not receive an extra hour's compensation at minimum wage; and (iii) liquidated damages, interest, costs, and attorneys' fees pursuant to the NYLL.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

5. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

6. Limarvin was, at all relevant times, an adult individual residing in Queens County, New York.

7. Libertto was, at all relevant times, an adult individual residing in Westchester County, New York.

8. Upon information and belief, Defendant Edo Restaurant Corporation is an active New York corporation with its principle places of business at 4787 Boston Post Road, Pelham,

2

New York, 10803, and 140 Midland Avenue, Port Chester, New York, 10573.

9. Upon information and belief, Defendant Shodan Inc. is an active New York corporation with its principle place of business at 140 Midland Avenue, Port Chester, New York, 10573.

10. Upon information and belief, Defendant Higuchi has been, at all material times herein, the chairman and/or chief executive officer of the Corporate Defendants, who participated in the day-to-day operations of the Corporate Defendants, and who acted intentionally and maliciously in his direction and control of Plaintiffs and the Corporate Defendants' other similarly situated employees. Higuchi set Plaintiffs' schedules and pay and was responsible for the Corporate Defendants' failure to pay all required wages and overtime. Higuchi is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

## COLLECTIVE ACTION ALLEGATIONS

11. Pursuant to 29 U.S.C. § 207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all hibachi chefs, waiters/waitresses, hostesses, busboys and other similarly situated restaurant employees who are or were employed by Defendants since October 18, 2008 and through the entry of judgment in this case (the "Collective Action Period"), and who are non-exempt within the meaning of the FLSA and were not paid overtime wages at the required premium rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

12. The Collective Action Members are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which

the calculation of that number is based are presently within Defendants' sole control, upon information and belief, there are in excess of forty (40) Collective Action Members during the Collective Action Period.

13. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

14. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

15. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of law and fact common to Plaintiffs and other Collective Action Members are:

    a. whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

    b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Collective Action Members;

    c. what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

    d. whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs were employed, in violation of 29 C.F.R. § 516.4;

    e. whether Defendants failed to pay Plaintiffs and the Collective Action Members compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

    f. whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and

    g. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

## CLASS ALLEGATIONS

16.     Pursuant to the NYLL, Plaintiffs sue on their own behalf, and on behalf of a class of persons under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

17.     Plaintiffs seek to prosecute their NYLL claims as a class action on behalf of all hibachi chefs, waiters/waitresses, hostesses, busboys and other similarly situated restaurant employees who are or were employed by Defendants since October 18, 2005 and through the entry of judgment in this case (the "Class Period"), who are non-exempt within the meaning of the NYLL and who (i) were not paid overtime at the required rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) hours per workweek; (ii) were not paid spread-of-hours payments for each day where they worked more than ten (10) hours and/or a split shift; and/or (iii) were subject to Defendants' illegal tip pooling practices (the

"Class Members").

18. The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number is based are presently within Defendants' sole control, upon information and belief, there are in excess of forty (40) members of the Class during the Class Period.

19. Plaintiffs' claims are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. Plaintiffs and the Class Members who work or have worked for Defendants have been subjected to Defendants' policy and practice of failing to pay overtime for hours worked in excess of forty (40) hours per week, failing to pay spread-of-hours payments on days in which employees work for more than ten (10) hours, and improperly distributing gratuities among restaurant employees.

20. As stated above, questions of law and fact common to the Class Members predominate over questions that may affect only individual members. As Defendants have acted or refused to act on grounds generally applicable to all Class Members, final injunctive relief or corresponding declaratory relief with respect to the Class as a whole is appropriate.

21. Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law and class action litigation. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs understand that as class representatives they assume a fiduciary responsibility to the Class Members to represent their interests fairly and adequately. Plaintiffs further recognize that as class representatives, they

must represent and consider the interests of the Class Members just as they would represent and consider their own interests, including with regard to decisions about the conduct of the litigation and its possible settlement.

22. Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in his possession, and testify, if required, in a deposition and in trial.

23. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Class Members may be relatively small, the expense and burden of individual litigation would make it virtually impossible for the Class Members to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a class action. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendants' practices.

24. There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

    a. whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

    b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

    c. what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members premium pay for hours worked in excess of forty (40) hours per workweek;

e. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees; and

f. whether Defendants failed to pay Plaintiffs and the Class Members an additional hour of pay for each hour worked in excess of ten (10) hours in one day and an additional hour of pay for each split shift worked in a day.

## STATEMENT OF FACTS

25. At all relevant times, Defendants have been in the restaurant business. Defendants currently own, operate and manage Edo Japanese Steakhouse, which has two locations: 4787 Boston Post Road, Pelham, New York, 10803, and 140 Midland Avenue, Port Chester, New York, 10573.

26. Defendants employ at least sixty (60) employees at any one time in their restaurant business and have a high rate of employee turnover.

27. Limarvin worked for Defendants from approximately April 2004 through September 2011 (the "Limarivin Employment Period"), as a hibachi chef. (Many Japanese steakhouses include "hibachi" tables, where there is a grill attached to the table and a hibachi chef prepares the patrons' meals in front of them.)

28. Throughout the Limarvin Employment Period, Limarvin typically worked five (5) or six (6) days each week, for at least eight (8) to ten (10) hours each day, for a total of between fifty (50) and sixty (60) hours per week.

29. Throughout the Limarvin Employment Period, Limarvin and the other hibachi

chefs were required to be in uniform and out on the dining floor by 2:00 p.m. each day to prepare for the dinner service. At the end of dinner service each night, among other tasks, Limarvin and the other hibachi chefs were required to clean the hibachis while waiting for the tips from the night to be counted and distributed.

30. Throughout the Limarvin Employment Period, Limarvin was paid a daily rate of between $76 and $89 per day. The daily rate did not fluctuate based on the number of hours he worked per day or the number of hours he worked per week. Therefore, although Limarvin frequently worked more than fifty (50) hours per week, he never received overtime pay at the mandatory rate of one and one half times his normal hourly rate. Similarly, although Limarvin sometimes worked more than ten (10) hours in one day, he never received "spread-of-hours" compensation in an amount equal to one hour's pay at the minimum wage on those days.

31. Throughout the Limarvin Employment Period, Limarvin was paid his wages partly by check and partly by cash. At the end of each two-week pay period, Limarvin received one envelop with a payroll check and one envelope enclosing a certain amount of cash and a handwritten calculation by Defendants. The calculation showed the total amount owed to Limarvin for the pay period (which was always his daily rate times the number of days he worked in the two-week period) minus the amount paid by check. Several examples of the handwritten calculations are appended hereto.

32. Libertto worked for Plaintiffs from approximately May 2001 through December 2010 (the "Libertto Employment Period"), as a hibachi chef. Like Limarvin, throughout the Libertto Employment Period, Libertto typically worked five (5) or six (6) days each week, for at least eight (8) to ten (10) hours each day, for a total of between fifty (50) and sixty (60) hours per week. Notwithstanding the fact that Libertto regularly worked more than forty (40) hours per

week and more than ten (10) hours per day, Defendants failed to pay Libretto overtime premiums for hours worked in excess of 40 in a week, or spread-of-hours pay for days in which Libretto worked longer than 10 hours and/or a split shift.

33. Throughout the Libretto Employment Period, Libretto was required to be in uniform and out on the dining floor by 2:00 p.m. each day that they worked to prepare for the dinner service. At the end of dinner service each night, among other tasks, Libretto and the other hibachi chefs were required to clean the hibachis while waiting for the tips from the night to be counted and distributed.

34. Throughout the Libertto Employment Period, Libertto was paid partly by check and partly by cash. At the end of the two-week pay period, Libretto would receive two envelopes, one with a payroll check and one containing cash. The cash envelop also contained a hand-written calculation of the total wages owed to Libretto using a day rate, minus the amount paid by check.

35. Beginning in approximately 2004, after an investigation by the New York State Department of Labor ("NYDOL"), Defendants began issuing payroll checks to Plaintiffs and other employees of Defendants containing calculations of hours worked and an hourly rate. Despite the fact that Defendants included a calculation of hours and rates on these paystubs, the number of hours worked and the hourly rates were not in fact the actual hours that Plaintiffs or the other employees of Defendants worked, or the true rates of pay. Notwithstanding the number of hours or the hourly rate designated, Plaintiffs would receive the same amount of total compensation each two-week pay period, based on their set daily rate.

36. Defendants established a tip pooling system for restaurant staff. Three percent of all tips went to the bartenders, and the remaining 97% was split equally between the "server"

staff, including waiters/waitresses and busboys, and the "kitchen" staff, including hibachi chefs, dishwashers and kitchen helpers. The dishwashers and kitchen staff received a percentage of tips each day although they had no contact with restaurant patrons.

37. Plaintiffs' work was performed in the normal course of Defendants' business and was integrated into Defendants' business.

38. The work performed by Plaintiffs required little skill and no capital investment.

39. Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment. Upon information and belief, all such individuals have worked in excess of fifty (50) hours per week and ten (10) hours per day.

40. Upon information and belief, Defendants have willfully failed to pay these similarly situated individuals overtime compensation and additional payments equal to one hour's pay at minimum wage for all days on which the individuals worked more than ten (10) hours. Additionally, upon information and belief, Defendants have willfully failed to operate the restaurants' tip pooling system in accordance with the NYLL's regulations.

41. As stated, the exact number of such similarly situated individuals is presently unknown, but within the sole knowledge of the Defendants and can be ascertained through appropriate discovery.

42. Upon information and belief, throughout all relevant time periods and during the course of Plaintiffs' own employment, Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT

43. Plaintiffs repeat and reallege each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

44. At all relevant times Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

45. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

46. Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

47. Plaintiffs have provided their consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b). Plaintiffs' written consent forms are attached hereto and incorporated by reference.

48. At all relevant times, Defendants had a policy and practice of refusing to pay their employees overtime compensation for hours worked in excess of forty (40) hours per workweek.

49. As a result of Defendants' willful failure to compensate its employees, including Plaintiffs and the Collective Action Members, a rate not less than one and one-half times the regular rate of pay (at rates of at least minimum wage) for work performed in excess of forty (40) hours in a workweek, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

50. As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

51. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

52. Due to Defendants' FLSA violations, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid minimum wages, their unpaid wages, their unpaid overtime compensation, an additional amount equal as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## NEW YORK LABOR LAW – FAILURE TO PAY OVERTIME
## AND SPREAD-OF-HOURS PAYMENTS

53. Plaintiffs, on behalf of themselves, the opt-in Plaintiffs and the members of the Class, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

54. At all relevant times, Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

55. Defendants willfully violated Plaintiffs' rights and the Class Members' rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, and an additional hour of pay for each hour worked in excess of ten (10) hours in one day, in violation of the NYLL and its implementing regulations.

56. The Defendants' NYLL violations have caused Plaintiff and the Class Members irreparable harm for which there is no adequate remedy at law.

57. Due to Defendants' NYLL violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages,

damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL § 663(1) et al. and § 196-d.

### THIRD CLAIM FOR RELIEF
### NEW YORK LABOR LAW – UNLAWFUL GRATUITY PRACTICES

58. Plaintiffs, on behalf of themselves, the opt-in Plaintiffs and the members of the Class, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

59. Upon information and belief, Defendants have failed to compensate Plaintiffs and the Class Members for all gratuities earned by forcing them to distribute portions of their tip pool shares to employees without contact with restaurant patrons, in violation of NYLL § 196-d. Accordingly, Defendants are now required to compensate Plaintiffs and the Class Members in an amount equal to the amount of tips that Plaintiffs and the Class Members have been forced to surrender to employees who do not have contact with patrons.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

    a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c. An order tolling the statute of limitations;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. An award of damages arising out of the non-payment of minimum wages;

g. An award of damages arising out of the non-payment of wages;

h. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL;

i. An award of damages for the non-payment of spread-of-hour pay for each split shift and/or shift in excess of ten hours worked;

j. An award of prejudgment and post-judgment interest;

k. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       October 18, 2011

                             PELTON & ASSOCIATES PC

By: _____
Brent E. Pelton (BP 1055)
Attorney for Plaintiff, Individually, and
on Behalf of All Other Persons Similarly Situated
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of EDO JAPANESE STEAKHOUSE, EDO REST CORP., SHODAN INC., KENJI HIGUCHI and/or their respective owners, subsidiaries, contractors, managers, shareholders, officers and/or affiliates to pay me overtime wages as required under state and/or federal law, and for making illegal wage deductions, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____  10/6/11          Dony Limnevin
      Signature                    Date                    Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of EDO JAPANESE STEAKHOUSE, EDO REST CORP., SHODAN INC., KENJI HIGUCHI and/or their respective owners, subsidiaries, contractors, managers, shareholders, officers and/or affiliates to pay me overtime wages as required under state and/or federal law, and for making illegal wage deductions, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit

_____     10/12/2011        Darwin Liberato
Signature                  Date                         Printed Name