UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONY LIMARVIN and DARWIN LIBERTTO, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

EDO RESTAURANT CORPORATION, SHODAN INC. and KENJI HIGUCHI, Jointly and Severally,

Defendants.

1:11-cv-07356-DAB
ECF

**DEFENDENTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT**

ROSNER & NAPIERALA, LLP
Madelyn S. Shulman (MSS-8494)
26 Broadway, 22nd Fl.
New York, NY 10004
Telephone: (212) 785-2577
Facsimile: (212) 785-5203

# Table of Contents

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 4

LEGAL ARGUMENTS........................................................................................ 8

**A. Applicable Provisions under the FLSA and the NYLL**................................................ 8

**B. Plaintiffs' Allegations Fail to State a Claim under the FLSA**...................................... 9

**C. Plaintiffs' conclusory allegations of "illegal tip pooling" do not state a claim under the NYLL.**........................................................................................ 11

**D. Plaintiffs' allegations of failure to receive "spread of hours pay" should be dismissed under New York law** ........................................................................................ 14

**E. Plaintiffs cannot maintain their case as a class action under New York State law** ........................................................................................ 15

CONCLUSION........................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*ATSI Commc'ns v. Shaar Fund*, 493 F.3d 87 (2d Cir. 2007)....8

*Carter v. Frito-Lay*, 74 A.D. 2d 550, 425 N.Y.S. 2d 115....15

*Chan v. Triple 8 Palace*, 2006 WL 851749 (S.D.N.Y. 2006)....11

*Cumbie v. Woody Woo, Inc.*, 596 F. 3d 577 (9th Cir. 2010)....13

*Foster v. The Food Emporium*, 2000 WL 1737858 (S.D.N.Y. 2000)....15

*Garcia v. La Revise Assoc.*, 2011 WL 135009 (S.D.N.Y. 2011)....13

*Gillian v. Starjem Restaurant*, 2011 WL 4639832 (S.D.N.Y. 2011)....11

*Grandon v. Merrill Lynch & Co.*, 147 F3d. 184 (2d Cir. 1998)....8

*Hai Ming Lu v. Jing Fong Restaurant*, 503 F.Supp.2d 706 (S.D.N.Y. 2007)....11

*Jenkins v. Hanac, Inc.*, 493 F.Supp.2d 556 (E.D.N.Y. 2007)....9

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007)....8

*Patel v. Baluchi's Indian Restaurant*, 2009 WL 2358620 (S.D.N.Y.2009)....15

*Schwerdtfiger v. Demarchelier Management*, 2011 WL 2207517 (S.D.N.Y. 2011)....11

**RULES AND STATUTES**

N.Y. Lab. Law §§ 650 *et seq.*....2

N.Y. Lab. Law §196-d....2,3.9

N.Y. Lab. Law §§650 *et. seq.*....2

12 NYCRR 142-2.1....9

12 NYCRR § 142-2.2 *et. seq.*....9

12 NYCRR Part 146, §146-1.6....9

12 NYCRR §146-2.14....12

12 NYCRR §146-2.16 ....................11

12 NYCRR §146-1.6 ....................9,14

29 U.S.C. 201, et. seq....................1

29 U.S.C. §§ 203(m) ....................9

29 U.S.C. § 203(t) ....................5

29 U.S.C.§ 206 ....................9

209 U.S.C.§ 207 ....................9

19 CFR §778.110(b) ....................11

29 CFR §§178.110 *et. seq*. ....................9

29 CFR 531.56 ....................5

Fed. R. Civ. P. §12(b)(6)....................8

Fed. R. Civ. P. 23 ....................2

FLSA §216(b) ....................7

## PRELIMINARY STATEMENT

Edo Restaurant Corporation, Shodan Inc. and Kenji Higuchi (collectively, the "Defendants") submit this Memorandum of Law in support of Defendants' Motion to Dismiss the Complaint[1] in its entirety for failure to state a claim with respect to Plaintiffs' allegations (1) that a claim for a potential class exists with respect to alleged violations of the Fair Labor Standards Act, 29 U.S.C. 201, et. seq. ("FLSA"), (2) for damages arising out of maintenance of an improper "tip pool," (3) that the named Plaintiffs can serve in any potential class as defined in the Complaint, (4) that Plaintiffs were not paid "spread of hours" pay, and (5) that class certification under Rule 23 is permitted insofar as the claims contained therein are not permitted to be pursued in a class proceeding under New York law.

Plaintiffs allege that Defendants failed to pay minimum wage and overtime in violation of the FLSA – the sole claim covered by the FLSA. Plaintiffs purport to bring such claims on behalf of themselves and "all current and former employees …other similarly situated current and former employees of the Defendants who elect to opt in… pursuant to the FLSA" that they are entitled to "unpaid wages from defendants EDO Restaurant Corporation, Shodan Inc. and Kenji Higuchi."[2]

The crux of Plaintiffs' minimum wage violation claim is two-fold: the first is that Plaintiffs were paid at a set "daily rate" and were not paid for overtime. Plaintiffs further claim that the Defendants[3] deprived Plaintiffs' of overtime pay because Defendants allegedly paid Plaintiffs a day rate.

---

1 Plaintiffs' complaint dated October 18, 2011 is referred to herein as the "Complaint."

2 Complaint ¶1.

3 *See infra* page 5.

Additionally, Plaintiffs' supporting allegations are specific to the duties of their specific job title, i.e. "hibachi chef" and do not extend to any other of the claimed employment categories.

The Complaint neither states a violation of the FLSA nor supports the named Plaintiffs as being "similarly situated" with those current and former employees which they define as their "class." Based upon the foregoing, Plaintiffs' allegations for a collective action should be dismissed; to the extent any violation exists, they are improper Plaintiffs in such action.

Plaintiffs further allege that they complain on "behalf of themselves, each opt in plaintiff and a class of all other similarly situated current and former employees of Defendants pursuant to Fed. R. Civ. P. 23 that they are entitled to (1) wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by New York Labor Law ("NYLL") §§ 650 et seq., including Part 142, §142-2.2 ("Overtime Rate") of Title 12 of the Official Compilation of Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR")….. (ii) compensation for days worked in which Plaintiff and the class worked in excess of ten hours and/or a split shift and did not receive an extra hour's compensation at minimum wage; and assorted liquidated damages, interest, costs and attorneys fees pursuant to the NYLL."[4]

Plaintiffs remaining claims seek relief under the NYLL for an allegedly "illegal" tip pool in violation of NYLL §196-d, "unpaid overtime" and allegedly unpaid "spread of hours" payments under NYLL §§ 650 et. seq. and the applicable regulations.[5] Such claims are permitted at the discretion of the court and only to the extent that Plaintiffs' initial claim of

---

4 Complaint at ¶2.

5 *Id.* at ¶¶ 2, 55, 59.

failure to pay minimum wage and overtime under the FLSA is supported. These allegations similarly fail.

Plaintiffs' claim under NYLL § 196-d alleges that kitchen helpers and dishwashers are not "tipped employees" and cannot share in the tip pool[6] established and utilized by the employees of Defendants.[7] According to Plaintiffs' theory of recovery, the inclusion of "kitchen helpers" and "dishwashers" in the tip pool "taints" the tip pool and invalidates the tip sharing plan. This meritless state law claim should not be considered in the Complaint, which alleges the jurisdiction of the FLSA.

Lastly, Plaintiffs' "spread of hours" claim fails not only to Plaintiffs Limarvin and Libretto, but also to each other hibachi chef (which job classification includes 15 of the 21 opt in plaintiffs in this action)[8] who was paid a minimum of $8 per hour as his listed base rate, plus overtime at the rate of $12 per hour, during all pay periods at issue.[9] The correct calculation of this differential, as interpreted by the New York State Department of Labor and the vast majority of courts in New York State, excludes employees paid at this wage rate. Thus, to the extent any claims exist under the NYLL they are (1) not covered by the FLSA and (2) not attributable to these employees or any employee within their job classification.

As a result of these defects, the Complaint should be dismissed in its entirety as a matter of law.

---

6 Plaintiffs combine separate tip pools at two separate restaurants owned by separate owners. Defendants believe that the allegations describe the separate tip pools maintained by each Restaurant.

7 Complaint ¶59.

8 Affidavit of Kenji Higuchi dated February 13, 2012 ("Higuchi Aff.) ¶20.

9 *Id.*

## STATEMENT OF FACTS

Defendant Edo Restaurant Corporation has owned and operated a Japanese style hibachi steakhouse restaurant under the name "Edo Japanese Steakhouse" in Pelham, New York (the "Pelham Restaurant") since 1988.[10]

Defendant Shodan Inc. owns and operates a Japanese style hibachi steakhouse restaurant under the name "Edo Japanese Steakhouse" in Port Chester, New York (the "Port Chester Restaurant" and together with the "Pelham Restaurant" collectively referred to herein as the "Restaurants").[11]

Defendant Kenji Higuchi is the principal executive officer of the Restaurants.[12]

Each of the Restaurants operates as a traditional "hibachi" steakhouse restaurant where substantially all of the food is prepared and cooked by "hibachi chefs" who have multiple duties that include preparing ingredients in the kitchen, preparation and cleanup duties and cooking on specialty "grill tables" in front of the guests.[13] In other words, the "cooks" in the hibachi restaurant perform both cooking and customer service duties. The cooks are assisted by other kitchen staff who assist in providing them with ingredients, bringing ingredients to the tables, when required, and performing other cleaning duties, along with restaurant wait staff, busboys, bartenders and other service and food preparation personnel.[14]

---

[10] Complaint ¶25; Higuchi Aff. ¶1.

[11] Complaint ¶25. Defendants deny that the two corporate Defendants jointly own the two restaurants, are jointly and severally liable, or that Higuchi is personally liable as a result of his position as chief executive officer. Defendants respectfully reserve their objections to these allegations for their answer and any subsequent substantive motion, in the event such answer or motion papers are necessary.

[12] Complaint ¶10. Plaintiffs' allegations as to Mr. Higuchi's control or willful disregard are conclusory. Mr. Higuchi respectfully reserves his objection to these allegations for his answer and any subsequent substantive motion, in the event such answer or motion papers are necessary.

[13] *Id.* at ¶ ¶27, 29; Higuchi Aff. ¶7.

[14] Higuchi Aff. ¶7.

Plaintiff does not allege that either Restaurant retains any tips, distributes any portion of any tips to management or remits less than 100% of all tips to non-management employees. Plaintiffs' sole allegation of facts underlying this claim is:

> Defendants established a tip pooling system for restaurant staff. Three percent of all tips went to the bartenders, and the remaining 97% was split equally between the "server" staff, including waiters/waitresses, and busboys, and the "kitchen" staff, including hibachi chefs, dishwashers and kitchen helpers. The dishwashers and kitchen staff received a percentage of tips each day although they had no contact with restaurant patrons.[15]

At each of the named Restaurants, tips are allocated among these personnel in the manner established by a committee composed of three Restaurant employees, the members of which committee rotates on a nightly basis. [16]

Plaintiffs -- cooks and food preparers -- were beneficiaries of the tip pool insofar as they were predominately "indirect" recipients of tips -- receiving tip pool income that was not given to them directly, but was left by customers as a percentage of bills, either in cash or by credit card.[17] Plaintiffs shared tips with their direct assistants, i.e. the kitchen helpers and dishwashers, just as the Restaurants' servers shared with their assistants ("bussers"), and all shared tips with bartenders and, where applicable, barbacks who are the bartenders' assistants.[18]

Each of the tipped employees was not only advised of their specific employer Restaurant's tip sharing plan at the time of their hire, understood the system and agreed to it, but also they participated in the allocation process on a regular, rotating basis.[19] The rotating

---

15 Complaint ¶36. The FLSA requires all participants in a tip pool to regularly receive at least $30 per month in tip income.29 U.S.C. §203(t); 29 CFR 531.56. Each participant in Defendants' various tip pools receives such amounts. Higuchi Aff. ¶18

16 Higuchi Aff. ¶4.

17 *Id*. at ¶ 13.

18 Declaration of Madelyn Spatt Shulman dated February 13, 2012 ("Shulman Decl.") ¶4, Ex. B (U.S. Department of Labor Opinion FLSA 2009-12 (January 15, 2009))**.**

19 Higuchi Aff. ¶19.

administration of the plan ensured that each of the Plaintiffs, who alleged employment for several years, was fully familiar with both the tip sharing plan and its rationale during the course of their employment.[20]

Plaintiffs do not allege that they had their cash wages reduced by any "tip credit." In fact, all were paid in excess of $8 per hour plus overtime in cash wages, exclusive of tips received.[21]

Plaintiffs attempt to extend to the "hibachi" restaurant model, where chefs work in front of patrons rather than "behind the scenes," the "traditional" job classifications adopted in restaurants with very different types of operation. Under the "hibachi" model, kitchen helpers (who, among their duties, bring ingredients to hibachi chefs on the outside floor, when necessary) and dishwashers, directly assist the hibachi chefs in serving more parties, more quickly and with less personal effort, so that more tips are earned by the entire restaurant staff. [22] Defendants traditionally have compensated these employees out of the hibachi chef's share of the tips.[23] To say that such compensation is improper is to reward "form" over substance and to treat these employees differently than those employees who assist other service staff, including barbacks, service bartenders and busboys: All of them have minimal contact with customers, but assist those employees with more direct contact (including servers, bartenders and hibachi chefs).[24]

As for the minimum wage and hour law claims, Plaintiffs' allege that since at least 2004 "Defendants began issuing payroll checks to Plaintiffs and other employees of Defendants

---

20 *Id*. at ¶19.

21 *Id*. at ¶9. Plaintiffs state that certain documentation of payments was annexed to the Complaint; however, such documents were not attached to the same.

22 *Id*. at ¶21.

23 *Id*.

24 Id. at ¶22.

containing calculations of hours worked and an hourly rate."[25] Plaintiffs state that the payroll checks, which "included a calculation of hours and rates on these paystubs, the number of hours worked and the hourly rates" were not in fact what Plaintiffs or the other employees of Defendants worked or the true rates of pay. Notwithstanding the number of hours or the hourly rate designated, Plaintiffs would receive the same amount of total compensation each two-week period, based on their set daily rate."[26]

Plaintiffs aver that they received income in addition to the amounts stated on their paystubs, which set forth the number of hours worked and their hourly rates.[27] The combination of these two allegations indicates that in addition to the amounts which were recorded in their biweekly paychecks and paystubs (which in the case of Limarvin and Libretto, showed a base rate of $8 per hour plus overtime for hours worked over 40 in each week)[28] they allegedly received an additional cash payment.

Such additional cash payment does not, as a matter of law, convert Limarvin's and Libretto's manner of payment from one which is determined on the basis of time and overtime, as recorded in biweekly calculations, to a "daily rate."[29]

Plaintiffs further allege that they were not paid an additional hour of pay for daily shifts of over 10 hours. However, their base rates as paid to them by check every two weeks during the entire period at issue are high enough to preclude any such finding.[30]

Plaintiffs invoke FLSA §216(b) as the basis of their claims. Yet, Plaintiffs fail to show that they are victims of any wrong governed by the FLSA or that any "general wrong" or policy

---

[25] Complaint ¶35.
[26] *Id*. at ¶ 35.
[27] *Id*. at ¶¶ 31, 34.
[28] *See supra* Note 9; Higuchi Aff. ¶9, Exh. A.
[29] *See* Section B *infra.*
[30] *See* Section D *infra.*

affected Plaintiffs' "potential class members" of "all hibachi chefs, waiters/waitresses, hostesses, busboys and other similarly situated restaurant employees who are or were employed by Defendants since October 18, 2008 and through the entry of judgment in this case, and who are non-exempt within the meaning of the FLSA and were not paid overtime wages at the required premium rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) hours per workweek."[31]

**LEGAL ARGUMENTS**

When deciding a motion to dismiss under Fed.R.Civ.Proc. §12(b) (6) the court must "accept as true all of the factual allegations contained in the complaint"[32] and "draw all inferences in the light most favorable to the non-moving party."[33] However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations …. A presumption of truthfulness."[34]

In deciding a motion to dismiss, the court is not limited to the face of the complaint, but may also consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference…and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[35]

---

31 Complaint ¶11.

32 *See ATSI Commc'ns v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007); *Grandon v. Merrill Lynch & Co.*, 147 F3d. 184, 188 (2d Cir. 1998).

33 *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

34 *Id.* (quotation omitted).

35 *ATSI Commc'ns, supra,* 493 F.3d at 98.

**A. Applicable Provisions under the FLSA and the NYLL**

The FLSA sets forth the requirement to pay a federal minimum wage and a requirement to pay overtime compensation for hours worked in excess of 40 per week.[36] The NYLL similarly contains minimum wage and overtime payment requirements. [37]

The FLSA and the NYLL have long recognized that an employer may treat a portion of an employee's tips as a credit against the employer's minimum wage and overtime obligations. [38] Defendants do not allege that either Restaurant relied upon this provision for payment of any named Plaintiff or anyone within their job classification.[39]

Regulations adopted pursuant to the NYLL require payment of at least "minimum wage" (currently $7.25) for one additional hour for each split shift or day of more than 10 hours.[40] The proper calculation of this statutory requirement makes it mathematically inapplicable to employees who are paid at least $8 per hour for a 10 hour day.[41]

In addition, both the FLSA and the NYLL regulate "tip pooling" and "tip sharing" among tipped employees. Where no FLSA claim is pled, as here, NYLL §196-d governs Plaintiffs' claim as to "tip pooling."[42]

---

36 *See* 29 U.S.C. §§206, 207. Effective July 24, 2009, both the federal and New York State minimum wage rates increased to $7.25 per hour. 29 U.S.C. §206, 12 NYCRR 142-2.1. If a state minimum wage is higher, the FLSA requires payment of the higher rate.

37 *Id*.

38 *See* 29 U.S.C. § 203(m) that specifically approves the "pooling" of tips "among employees who customarily and regularly receive tips" and Section 203(t) which defines "tipped employees" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."

39 *See* 29 CFR §§778.110 *et.seq.*; 12 NYCRR §142-2.2 *et.seq*.

40 12 NYCRR §146-1.6.

41 Shulman Decl. ¶3, Ex. A (N.Y.S. Department of Labor Response to Request for Opinion File No. RO-07-0009); *see also, Jenkins v. Hanac, Inc*., 493 F.Supp.2d 556, 558 (E.D.N.Y. 2007).

42 N.Y. Lab. Law §196-d.

**B. Plaintiffs' Allegations Fail to State a Claim under the FLSA.**

Plaintiffs' allegations do not support a plausible claim that they were not paid minimum wages for hours worked and/or overtime in violation of the FLSA.

Specifically, Plaintiffs allege that since at least 2004, they received check stubs each pay period that stated their hours worked and amounts paid, including tips and tax deductions.[43] Plaintiffs make a blanket statement that all six years of detailed pay stubs were inaccurate and did not reflect either Plaintiffs' or the other employees of Defendants' actual hours worked or the true rate of pay.[44]

It appears implausible that Plaintiffs would have received detailed "inaccurate" statements each week for several years without at any time questioning the accuracy. In addition, Plaintiffs' allegation that Defendants' other employees also systematically received pay reports which did not accurately reflect their actual hours worked or actual rates of pay are conclusory and without support. The named Plaintiffs' allegations as to their hours and duties do not state that such duties were inconsistent with their recorded payments for straight time and overtime.[45]

Instead, Plaintiffs' allege that they received cash payments in addition to payroll checks.[46] This allegation does not support a claim that Plaintiffs' were not paid for their hours worked or that they were paid at a "day rate" or that Defendants engaged in any systematic wrongdoing which would cause Plaintiffs' to be deprived of minimum wage or overtime.

---

43 Complaint ¶35.

44 *Id.*; *see also*, Higuchi Aff. ¶9, Exh. A,¶10.

45 Complaint ¶¶29, 33; *see also*, Higuchi Aff. ¶ 9, Exh. A.

46 Complaint ¶¶31, 34.

While the allegation of receipt of additional payments by an hourly worker may be relevant with respect to correct calculation of that employee's overtime pay, it does not affect the actual number of hours worked.[47] It further does not support any systematic abuse under the FLSA which would support a class action.

In the event Plaintiffs' allegations do not state a claim that they were not paid minimum wage or overtime under the FLSA, there is no basis for federal jurisdiction and this case must be dismissed.

**C. Plaintiffs' conclusory allegations of "illegal tip pooling" do not state a claim under the NYLL.**

Plaintiffs allege claims under the NYLL for damages for "forcing them to distribute portions of their tip pool shares to employees without contact with restaurant patrons, in violation of NYLL Section 196-d" allegedly requiring Defendants to compensate "Plaintiffs" and the "Class Members" "in an amount equal to the amount of tips that Plaintiffs and the Class Members have been forced to surrender to employees who do not have contact with patrons."[48]

However, the tip pool as described by Plaintiffs does not constitute a violation of either the FLSA or the NYLL as a matter of law.[49]

Although the NYLL regulations discuss the "service to customers" aspect of qualification for participation in tip pool and tip sharing arrangements, both the statute and the regulations allow broad latitude. For example, 12 NYRR 146-2.16 permits pooling of tips by

---

47 19 CFR §778.110(b).

48 Complaint ¶59.

49 *See infra* Note 50; *see also*, *Schwerdtfiger v. Demarchelier Management*, 2011 WL 2207517*2 (S.D.N.Y. 2011) (allegations of manager participation in tip pool); *Gillian v. Starjem Restaurant*, 2011 WL 4639832*4 (S.D.N.Y. 2011) (allegation of manager and employer participation in tip pool); *Hai Ming Lu v. Jing Fong Restaurant*, 503 F.Supp.2d 706, 710 (S.D.N.Y. 2007) (allegation that owner used gratuity pool to pay restaurant expenses); *Chan v. Triple 8 Palace*, 2006 WL 851749*1 (S.D.N.Y. 2006) (allegations that banquet fee kept by restaurant was tips).

mutual agreement among "directly tipped employees and indirectly tipped employees who participated in providing the service." The regulations accept both tip pooling and tip sharing arrangements with a great deal of latitude so long as owners and management do not participate in the arrangements.

NYRR Part 146 defines a "food service worker" eligible to participate as "any employee who is "primarily engaged in the serving of food or beverages to guests, patrons or customers in the hospitality industry, including, <u>but not limited to</u>, wait staff, bartenders, captains and bussing personnel; and who regularly receives tips from such guests, patrons or customers." Examples of some of the "eligible occupations" include "service bartenders," and "barbacks.[50]

In the typical "hibachi restaurant" formula, "kitchen helpers" and to some extent even dishwashers assist the hibachi chef just as the barback or service bartender assist the bartender or waiter.[51] Unlike the traditional kitchen where the "cook" is a "back of the house" employee, substantially all cooking is done by the hibachi chefs.[52] Under the direction of the hibachi chefs, kitchen helpers perform many of the same duties that hibachi chefs perform themselves enabling the hibachi chefs to service more tables and collect more tips; dishwashers perform some of the same services.[53] Thus, compensation of such employees through a share of the tips allocated to the hibachi chefs is a logical and permissible use of a tip pool since their services contribute to the expansion of that pool.[54]

For example, in *Cumbie v. Woody Woo, Inc*., the United States Court of Appeals for the Ninth Circuit affirmed the district court's decision that dismissed the employees' complaint

---

50 12 NYCRR §146-2.14; U.S. Department of Labor Letter Opinion FLSA 2009-12 (January 15, 2009).

51 Higuchi Aff. ¶21.

52 *Id.*

53 *Id.*

54 *Id.*

against the restaurant because the latter's tip pool, to which plaintiff was required to contribute all tips, was redistributed to all restaurant employees (between 55% and 70% went to kitchen staff (e.g. dishwashers and cooks)), whom the court stated were not "customarily tipped" in the restaurant industry).[55] In *Cumbie*, the restaurant did not claim a "tip credit" to satisfy wages, and, as such, the pooling requirement was permissible.[56]

The United States District Court for the Southern District of New York recognized *Cumbie* when it dismissed an action based upon a tip pool which included "servers, runners, busboys, captains, bartenders and the Restaurant's banquet coordinator."[57] In *Garcia*, the defendant had taken a "tip credit."[58] The court found the tip pool proper insofar as it included no management personnel and the personnel provided both direct and indirect service to customers.[59]

Plaintiffs allege that they were illegally deprived of tip income.[60] Yet, both federal and New York law holds that the tip pools maintained by Defendants' employees complied with the intent of NYLL and its supporting regulations, insofar as the only persons participating were "tipped employees" directly or indirectly providing service to customers.

Where, as here, Plaintiffs are "cooks" where: i) no deduction was taken for any "tip credit" against plaintiffs' salaries; ii) they are beneficiaries of the Restaurant's tip pooling and tip sharing practices; and iii) they are directly assisted by the kitchen helpers, to the extent NYCRR and case law already recognize the proper inclusion of "assist" personnel to directly tipped persons, their action should be dismissed.

---

55 *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010).

56 *Id.* at

57 *Garcia v. La Revise Assoc.*, 2011 WL 135009 (S.D.N.Y. 2011).

58 *Id.* at*3.

59 *Id.* at*8.

60 Complaint ¶59.

**D. Plaintiffs' allegations of failure to receive "spread of hours pay" should be dismissed under New York law.**

Each named Plaintiff alleges that he failed to receive "spread of hours pay" for days in which he worked longer than 10 hours and/or a split shift.[61] However, Plaintiffs are not entitled to any additional spread of hours pay allocation.[62]

Insofar as such documents were relied on by Plaintiffs, Defendants have submitted copies of Plaintiffs' wage reports for the three years prior to the filing of the Complaint.[63] According to those reports, Plaintiffs' received at least base rate wages of $8 per hour, plus overtime at $12 per hour.[64]

Plaintiffs do not allege that they worked any split shifts, but rather that they worked more than 10 hours per day on at least some occasions. As shown by their pay reports, during such 10 hour days, Plaintiffs would have received at least $8 per hour for each of 10 hours ($80); this would exceed the "spread of hours pay" minimum ($7.25 x 11 hours or $79.25). Based upon the NY Labor Department's interpretation -- which has overwhelmingly been accepted by federal courts -- payment of at least an $8 wage rate mathematically includes payment of the additional hour at $7.25 where the Plaintiff alleges that he worked a shift of more than 10 hours (as opposed to a "split shift," where an employee could have worked a shift shorter than 10 hours).[65]

Since this regulation does not apply to the Plaintiffs, their claims should be dismissed as a matter of law.

---

61 *Id*. at ¶¶ 30, 32.

62 *See supra* Note 41; *see also*, 12 NYCRR 146-1.6.

63 Higuchi Aff. ¶9, Exh. A.

64 *Id.*

65 *See supra* note 41.

**E. Plaintiffs cannot maintain their case as a class action under New York State law.**

Only one of plaintiffs' claims alleges a violation of the FLSA.[66] All other claims arise under the NYLL.[67] Because the state labor law claims seek liquidated damages, the Complaint cannot be maintained as a class action. New York courts have long held that liquidated damages of the kind found in the NYLL are punitive in nature and, therefore, act as a bar to a class-based recovery.[68] Accordingly, Plaintiffs should be precluded from maintaining a class action of this kind under New York State law.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Complaint should be dismissed under Fed.R.Civ.Proc. §12(b) (6) for a failure to state a claim upon which relief can be granted.

Dated: New York, New York
February 13, 2012

Respectfully submitted,

By: /s/ Madelyn Spatt Shulman
Madelyn S. Shulman (MSS-8494)
Rosner & Napierala, LLP
26 Broadway, 22nd Fl.
New York, NY 10004-2442
Telephone: (212) 785-2577
Facsimile: (212) 785-5203

---

66 Complaint ¶¶43-52.

67 *See generally* the Complaint.

68 *See, e.g.*, *Carter v. Frito-Lay*, 74 A.D. 2d 550, 425 N.Y.S. 2d 115 (1st Dept. 1980), *aff'd*, 52 N.Y.S.2d 80 (1981); *Foster v. The Food Emporium*, 2000 WL 1737858 *3 (S.D.N.Y. 2000); *accord Patel v. Baluchi's Indian Restaurant*, 2009 WL 2358620 *9 (S.D.N.Y. 2009).