**PELTON & ASSOCIATES, PC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**DONY LIMARVIN and DARWIN LIBERTO,**
**Individually and on Behalf of all other Employees**
**Similarly Situated,**

                           **Plaintiffs,**

-against-


**EDO RESTAURANT CORPORATION, SHODAN**
**INC. and KENJI HIGUCHI, Jointly and Severally,**

                        **Defendants.**

**ECF Case**


**11-cv-7356 (DAB)**


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
## TO CONDITIONALLY CERTIFY A FAIR LABOR STANDARDS ACT
## COLLECTIVE ACTION AND AUTHORIZE NOTICE TO BE ISSUED
## TO ALL PERSONS SIMILARLY SITUATED

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .........................................................................................1

ARGUMENT ..............................................................................................................5

I.     CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION IS
APPROPRIATE .................................................................................................5

     A.     Conditional Certification Requires Only a Minimal Showing that Plaintiffs
Are Similarly Situated to Other Employees.............................................7

     B.     All Defendants' Hibachi Chefs Are Similarly Situated .........................9

II.     THE ISSUANCE OF A *HOFFMAN-LAROCHE* NOTICE IS APPROPRIATE.............11

     A.     The Proposed Notice Is Fair and Accurate ...........................................12

     B.     This Court Should Order Defendants to Produce the Limited Amount of
Information Necessary to Ensure Timely and Effective Notice ............14

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

**Page**

CASES

*Braunstein v. Eastern Photographic Laboratories, Inc.*,
   600 F.2d 335 (2d Cir. 1979).......................................................................................11

*Cano v. Four M Food Corp.*,
   2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009)..............................................8

*Cook v. United States*,
   109 F.R.D. 81 (E.D.N.Y. 1985)..................................................................................15

*Cunningham v. Elec. Data Sys. Corp.*,
   754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)................................................................7

*Delaney v. Geisha NYC, LLC*,
   261 F.R.D. 55, 60 (S.D.N.Y.2009) ..........................................................................16

*Diaz v S&H Bondi's Dept. Store, Inc.*,
   No. 10 Civ. 7676 (PGG), 2012 U.S. Dist. LEXIS 5683 (S.D.N.Y. Jan. 18, 2012) .................15

*Garza v. Chicago Transit Authority*,
   2001 U.S. Dist. LEXIS 6132 (N.D. Ill. May 8, 2001) ..............................................13

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
   282 F. Supp. 2d 101 (S.D.N.Y. 2003).........................................................................8

*Guillen v. Marshalls of MA, Inc.*,
   750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010).................................................................6

*Hoffman v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997)..............................................................................7

*Hoffman-LaRoche, Inc. v. Sperling*,
   493 U.S. 165 (1989)........................................................................................... *passim*

*In re Deloitte & Touche, LLP Overtime Litigation*,
   No. 11 Civ. 2461 (RMB)(THK), 2012 U.S. Dist. LEXIS 12641 (S.D.N.Y. Jan. 17, 2012) .........15

*Iriarte v. Redwood Deli & Catering, Inc.*,
   2008 U.S. Dist. LEXIS 50072 (E.D.N.Y. June 30, 2008) .........................................9

*Jacob v. Duane Reade, Inc.*,
   2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 27, 2012) ...........................12, 13, 15

**Page**

*Johnson v. American Airlines, Inc.*,
    531 F. Supp. 957 (N.D. Tex. 1982) ..........................................................................13

*Lin v. Benihana Nat'l Corp.*,
    755 F. Supp. 2d 504, 514 (S.D.N.Y. 2010)...............................................................15

*Lujan v. Cabana Mgmt.*,
    2011 U.S. Dist. LEXIS 9542 (E.D.N.Y. Feb. 1, 2011).............................................8

*Lynch v. United Services Auto. Ass'n*,
    491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)...............................................................6

*Malloy v. Richard Fleischman & Associates, Inc.*,
    No. 09 Civ. 322 (CM), 2009 U.S. Dist. LEXIS 51790 (S.D.N.Y. June 3, 2009) ...................12

*Mentor v. Imperial Parking Sys., Inc.*,
    246 F.R.D. 178, 181 (S.D.N.Y. 2007) ......................................................................7

*Morales v. Plantworks, Inc.*,
    No. 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 2, 2006) ......................7

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)...............................................................................6, 8

*Patton v. Thomson Corp.*,
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) ......................................................................7

*Pippins v. KPMG LLP*,
    2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012) ........................................13, 15

*Raniere v. Citigroup Inc.*,
     827 F. Supp. 2d 294, 2011 U.S. Dist. LEXIS 135393 (S.D.N.Y. Nov. 22, 2011) ..........13, 15

*Ravenell v. Avis Budget Car Rental, LLC*,
    2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July 19, 2010).......................................10

*Romero v. Producers Dairy Foods, Inc.*,
    235 F.R.D. 474, 492-93 (E.D.Cal. 2006).................................................................12

*Rosario v. Valentine Ave. Disc. Store, Co.*,
    2011 U.S. Dist. LEXIS 126634 (S.D.N.Y. Nov. 2, 2011)......................................14

iii

**Page**

*Schwerdtfeger v. Demarchelier Mgmt., Inc.*,
 No. 10 Civ. 7557, 2011 U.S. Dist. LEXIS 60338 (S.D.N.Y. June 6, 2011) ........................6, 9

*Sherrill v. Sutherland Global Servs. Inc.*,
 487 F. Supp. 2d 344 (W.D.N.Y. 2007) ...................................................................................12

*Spicer v. Pier Sixty LLC*,
 269 F.R.D. 321, 336 (S.D.N.Y. 2010) ......................................................................................6

*Summa v. Hofstra Univ.*,
 715 F. Supp. 2d 378 (E.D.N.Y. 2010) ....................................................................................11

*Trinidad v. Breakaway Courier Systems*, *Inc.*,
 2007 U.S. Dist. LEXIS 2914, at *11 (S.D.N.Y. Jan. 12, 2007)...............................................11

*Veliz v. Cintas Corp.*,
 2007 U.S. Dist. LEXIS 24428 (N.D. Cal. Mar. 20, 2007).......................................................13

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
 767 F. Supp. 2d 445 (S.D.N.Y. 2011).....................................................................................14

*Winfield v. Citibank, N.A.*,
 No. 10 Civ. 7394 (JGK), 2012 U.S. Dist. LEXIS 16449 (S.D.N.Y. February 9, 2012)............7

*Wraga v. Marble Lite, Inc.*,
 2006 U.S. Dist. LEXIS 60457 (E.D.N.Y. Aug. 22, 2006).........................................................7

*Zhao v. Benihana, Inc.*,
 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) ...........................................................9

*Zheng Fang v. Yongjing Zhuang*,
 2010 U.S. Dist. LEXIS 133618 (E.D.N.Y. Dec. 2010) .............................................................8

*Zivali v. AT&T Mobility LLC*,
 646 F. Supp. 2d 658, 661 (S.D.N.Y. 2009)..............................................................................7


**STATUTES, RULES, AND REGULATIONS**

29 U.S.C.
 § 215(a)(3) ...............................................................................................................................12

**Page**

§ 216(b) .................................................................................................................. *passim*

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................................................8

## PRELIMINARY STATEMENT

Named Plaintiffs Dony Limarvin ("Limarvin") and Darwin Libertto ("Libertto" and collectively with Limarvin, the "Named Plaintiffs" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion for an order:

(1) conditionally certifying Plaintiffs' Fair Labor Standards Act ("FLSA") unpaid wages and overtime claims (Count I) as an FLSA collective action on behalf of all hibachi chefs who are or were employed by defendants Edo Restaurant Corporation, Shodan Inc. (collectively with Edo Restaurants Corporation, the "Corporate Defendants"), and Kenji Higuchi ("Higuchi" and, collectively with the Corporate Defendants, the "Defendants") since October 18, 2008 to the entry of judgment in this case (the "Collective Action Period");

(2) approving the notice of lawsuit with opportunity to join ("Notice"), attached to the Pelton Decl. as Exhibit "K";

(3) directing Defendants to furnish to Plaintiffs in electronically readable form the names, last known addresses, telephone numbers (including cell phone numbers), and email addresses of all members of the defined class so that Plaintiffs can issue the Notice and require that the notice be posted within Defendants' workplaces. Plaintiff further requests that Defendants be required to provide social security numbers for any class members whose notice is undeliverable.

## STATEMENT OF FACTS

This action commenced with Plaintiffs' Class & Collective Action Complaint (the "Complaint") October 18, 2011.[1]  Defendants filed an Answer and Affirmative Defenses on

_____

[1] *See* Pelton Decl. Ex. A.

1

August 24, 2012 (Dkt. 56).[2]  Defendants filed a Motion to Dismiss on February 13, 2012 (Dkt.

43), which was summarily denied by the Court in an Order dated August 10, 2012 (Dkt. 55).[3]

Plaintiffs are former hibachi chefs employed by Defendants to provide dinner services to

customers, prepare food for both restaurant patrons and employees and clean the dining and

kitchen areas.[4]  Defendants own and operate an enterprise of two (2) restaurants located at 4787

Boston Post Road, Pelham, New York 10803 ("4787 Boston Post Road") and 140 Midland

Avenue, Port Chester, New York 10573 ("140 Midland Avenue"), specializing in Japanese

cuisine.[5]  Both of Defendants' restaurant locations adhere to common policies and procedures

relating to, *inter alia*, employee work schedules and pay.

In the Complaint, Plaintiffs allege that Defendants violated their FLSA rights and the

FLSA rights of all other hibachi chefs employed by Defendants by:

> Failing to pay hibachi chefs wages for all hours worked and requiring their hibachi chefs
> to consistently work more than forty (40) hours per week but refusing to pay them at the
> required overtime rate of time and one-half their regular hourly rate for all hours worked
> beyond forty (40) per week.[7]

**Plaintiffs' Job Responsibilities**

Hibachi chefs were primarily responsible for preparing food, providing dinner services to

customers at their tables, cooking employee meals, cleaning the kitchen and dining area, and

---

[2] *See* Pelton Decl. Ex. B.

[3] *See* Pelton Decl. Ex. C, Ex. D.

[4] *See* Pelton Decl. Ex. A ¶¶ 27, 29, 33.

[5] *Id.* at ¶ 25.

[7] *See* Pelton Decl. Ex A ¶¶ 1, 11, 40.

other general responsibilities of a food service employee.[8]  Plaintiffs worked in both the "4787 Boston Post Road" and the "140 Midland Avenue" locations of Defendants' restaurant chain.[9]

Throughout the Collective Action Period, Plaintiffs were typically required to work five (5) or six (6) days per week, between eight (8) and ten (10) hours per day, for a total of between approximately fifty (50) to sixty (60) hours per week. [10]

**Defendants' Method of Compensating Plaintiffs**

In their declarations, Plaintiffs uniformly report that although they regularly worked well in excess of forty (40) hours per week during their employment with Defendants, they did not receive overtime premiums for hours worked over forty (40) in a given workweek.[11]  Instead, Plaintiffs were paid by a combination of check and cash at the same daily rate.[12]  Plaintiffs were paid these wages in an envelope bi-weekly.[13]  The envelope also contained a hand-written calculation of total wages owed to Plaintiffs using a day rate, minus the amount paid by check.[14] After an investigation by the New York State Depratment of Labor (NYDOL) in approximately 2004, Defendants began issuing payroll chekcs to Plaintiffs containing calculations of hours worked and an hourly rate, along with a separate payment of cash.[15]  These calculations

---

[8] *See* Pelton Decl. Ex. E ¶ 3, Ex. F ¶ 3.

[9] *See* Pelton Decl. Ex. H ¶ 10.

[10] *See* Pelton Decl Ex. E ¶ 2, Ex. F ¶ 2, Ex. G ¶ 2, Ex. H ¶ 2, Ex. I ¶ 2, Ex. J ¶ 2.

[11] *See* Pelton Decl Ex. E ¶ 4, Ex. F ¶ 4, Ex. G ¶ 4, Ex. H ¶ 5, Ex. I ¶ 5, Ex. J ¶ 4.

[12] *See* Pelton Decl Ex. E ¶ 5, Ex. F ¶ 5, Ex. G ¶ 5, Ex. H ¶ 6, Ex. I ¶ 6, Ex. J ¶ 5.

[13] *Id.*

[14] *Id.*

[15] *See* Pelton Dec. Ex A ¶ 35.

contained an incorrect number of hours worked as well as a false hourly wage.[16]   The cash payments included a hand-written calculation of total wages owed to Plaintiffs based on their daily rate of pay, minus the amount paid by the payroll check. [17]   Notwithstanding the number of hours Plaintiffs worked or the hourly rate designated in the payroll check calculations, Plaintiffs always received the same amount of total compensation during each two-week pay period based on their fixed daily rate.[18]   Defendants also established a tip pooling system which required Plaintiffs to share tips with restaurant staff who had no contact with restaurant patrons.[19] Plaintiffs were paid in the same manner in both of the Defendants' locations in which they worked.[20]

**Job Responsibilities and Compensation Structure of Defendants' Other Employees**

Plaintiffs are aware based on conversations with their colleagues and their observations at the workplace that other hibachi chefs who are or were employed by Defendants had similar schedules and pay structures.[21]   Plaintiffs and other hibachi chefs who are or were employed by Defendants worked shifts at both of the Edo Japanese Steakhouse locations and were not paid wages for all work performed and overtime premiums for hours worked in excess of forty (40) in a week regardless of the restaurant location.[23]

---

[16] *Id.*

[17] *See* Pelton Decl. Ex E ¶ 5, Ex. F ¶ 5, Ex. G ¶ 5, Ex. H ¶ 6, Ex. I ¶ 6, Ex. J ¶ 5.

[18] *See* Pelton Decl. Ex E ¶ 6, Ex. F ¶ 6, Ex. G ¶ 6, Ex. H ¶ 7, Ex. I ¶ 7, Ex. J ¶ 6.

[19] *See* Pelton Decl. Ex E ¶ 7, Ex. F ¶ 7, Ex. G ¶ 7, Ex. H ¶ 8, Ex. I ¶ 8, Ex. J ¶ 7.

[20] *See* Pelton Decl. Ex E ¶ 8, Ex. F ¶ 8, Ex. G ¶ 8, Ex. H ¶ 10, Ex. J ¶ 8.

[21] *Id.*

[23] *Id.*

**Defendants' Awareness of, and Failure to Remedy, The Illegal Pay Practices**

Throughout the relevant period leading up to the instant lawsuit, Defendants refused to address and correct the issue of unpaid wages and overtime.  Despite an investigation by the New York Department of Labor in 2004, Defendants continued to maintain their unlawful pay practices of paying their employees at a fixed daily rate regardless of the hours they worked. [24] When Plaintiffs were hired to work for Defendants, it was explained to them that their pay was based on the day, not the hours worked. [25]  As such, Defendants' managerial employees were aware that Plaintiffs worked more than forty (40) hours per week but received no overtime. Plaintiff Libertto complained to his direct manager about not receiving overtime to which his manager responded that Plaintiff Libertto had agreed to be paid a fixed daily rate and thus his extra hours worked were already included.[26]

## <u>ARGUMENT</u>

## I.   CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION IS APPROPRIATE

The FLSA's "collective action" provision allows one or more employees to bring an action for wage violations on behalf of themselves and other employees who are "similarly situated."  29 U.S.C. § 216(b); *Shariar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 243-44 (2d Cir. 2011).  "The evident purpose of the [FLSA] is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other."  *Shain v. Armour & Co.*, 40 F. Supp. 488, 490 (W.D.

---

[24] *See* Pelton Decl. Ex. A ¶ 35.

[25] *See* Pelton Decl. Ex. E ¶ 9.

[26] *Id.*

Ky. 1941).   These collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact."   *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The Second Circuit Court of Appeals has endorsed a two-step method of certification in an opt-in collective action under the FLSA. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010).  At the first step, the Court must determine whether it is appropriate to send notice to potential opt-in plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," *Id*. at 555, thus issuing a "conditional certification" of the collective action, *see Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10 Civ. 7557, 2011 U.S. Dist. LEXIS 60338, at *9 (S.D.N.Y. June 6, 2011); *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) ("Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification requirement.").   Because certification at this first early stage is preliminary and subject to reevaluation, the burden for demonstrating that potential plaintiffs are "similarly situated" is very low. *See Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 336 (S.D.N.Y. 2010) ("The first stage, conditional certification, requires only a modest factual showing based on the pleadings and affidavits that the putative class members were victims of a common policy or plan that violated the law.") (internal citations and quotation marks omitted). "'The leniency of this requirement is consistent with the broad remedial purpose of the FLSA.'" *Spicer*, 269 F.R.D. at 336 (quoting *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS 4267, at *5 (S.D.N.Y. Feb. 2, 2006)).

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs.  The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Winfield v. Citibank, N.A.*, No. 10 Civ. 7394 (JGK), 2012 U.S. Dist. LEXIS 16449, at *9 (S.D.N.Y. February 9, 2012) (quoting *Myers*, 624 F.3d at 555).

Here, Plaintiffs seek to bring their FLSA claim for unpaid wages and overtime on behalf of all hibachi chefs who are or were employed by Defendants in both of their Edo Japanese Steakhouse locations during the Collective Action Period ("Collective Action Members").

### A. Conditional Certification Requires Only a Minimal Showing that Plaintiffs Are Similarly Situated to Other Employees

The standard for conditionally certifying a FLSA collective action and authorizing notice to potential opt-in plaintiffs – that the named plaintiffs and the potential opt-in plaintiffs are 'similarly situated' – is "not a stringent one."  *Wraga v. Marble Lite, Inc.*, 2006 U.S. Dist. LEXIS 60457, at *3 (E.D.N.Y. Aug. 22, 2006) (citing *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 266-67 (E.D.N.Y. 2005); *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 661 (S.D.N.Y. 2009).   In fact, when exercising its discretion at the conditional certification stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (internal citations omitted); *see also, Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007) (stating that "the merits of plaintiffs claims need not be evaluated and discovery need not be completed to approve and disseminate a § 216(b) notice").  Plaintiffs need only make a "modest factual showing that they and potential opt-in plaintiffs together were

victims of a common policy or plan that violated the law." *Myers* 624 F.3d at 554; *Sbarro*, 928 F. Supp. at 261; *see also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003).

Likewise, the standard for conditionally certifying an FLSA collective action is considerably easier to meet than the standard required by Fed. R. Civ. P. 23 for class certification. *Myers*, 624 F.3d at 556; *Lujan v. Cabana Mgmt.*, 2011 U.S. Dist. LEXIS 9542, at *13 (E.D.N.Y. Feb. 1, 2011) (quoting *Cano v. Four M Food Corp.*, 2009 U.S. Dist. LEXIS 7780, at *4 (E.D.N.Y. Feb. 3, 2009)). Pursuant to the very lenient conditional certification standard, the Rule 23(a) and (b)(3) requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority are all inapplicable in the FLSA context. *Iglesias-Mendoza*, 239 F.R.D. at 368. This distinction "makes sense," since "[t]he FLSA's opt-in provision simply provides an opportunity for potential plaintiffs to join the action but does not bind those who do not; by contrast, the 'opt-out' regime under Rule 23 does bind absent class members who nevertheless are deemed to have had adequate opportunities to participate in the action brought on their behalf." *Patton*, 364 F. Supp. 2d at 267.

The amount of evidence Plaintiffs must put forward to prevail in the 'similarly situated' inquiry is minimal. Statements of the Named Plaintiffs and opt-in plaintiffs setting forth their personal knowledge of defendants' common violations of the FLSA are more than enough to warrant FLSA conditional certification. *See, e.g.*, *Cano*, 2009 U.S. Dist. LEXIS 7780, at *17; *Zheng Fang v. Yongjing Zhuang*, 2010 U.S. Dist. LEXIS 133618, at *7-8 (E.D.N.Y. Dec. 2010) (one affidavit sufficient); *Iriarte v. Redwood Deli & Catering, Inc.*, 2008 U.S. Dist. LEXIS 50072, at *9 (E.D.N.Y. June 30, 2008) (same); *Wraga*, 2006 U.S. Dist. LEXIS 60457, at *5-6

(several affidavits sufficient); *Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678, at *12 (S.D.N.Y. May 7, 2001) (one affidavit based on plaintiff's "best knowledge" sufficient).

Indeed, Courts have found employees "similarly situated" for purposes of the FLSA even where they performed different job functions or worked at different locations, as long as they were subject to the same allegedly unlawful policy. *See Karic v. The Major Automotive Companies, Inc.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (granting conditional certification where plaintiffs alleged that all of defendants' locations had the same pay policies, even where there were some locations at which named plaintiffs never worked); *Schwerdtfeger v. Demarchelier Mgmt.*, No. 10 Civ. 7557 (JGK), 2011 U.S. Dist. LEXIS 60338, at *16 (S.D.N.Y. June 6, 2011) (granting conditional certification in case alleging minimum wage and overtime violations where the group of employees comprised workers performing different functions and both tipped and non-tipped employees); *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 678 F. Supp. 2d 89 (E.D.N.Y. 2010) (certifying a class of workers at three restaurants even though the plaintiffs all worked for the same restaurant); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) (certifying a class of restaurant workers based on a statement that a uniform policy existed even though plaintiffs only worked at some of the restaurants).

Here, Plaintiffs' affidavits along with the pleadings on the record present more than enough evidence to satisfy Plaintiffs' evidentiary burden. As demonstrated more fully in the Statement of Facts section above, the facts in this case fit neatly with the contours of the well-settled 'similarly situated' inquiry.

### B.    All Defendants' Hiabchi Chefs Are Similarly Situated

Plaintiffs and the Collective Action Members were all employed by Defendants as hibachi chefs with the responsibility of preparing and cleaning food for dinner service, providing

dinner services to restaurant patrons, cooking employee meals and cleaning the kitchen and dining areas of the restaurants.  All were typically required to work approximately 50 to 60 hours per week during the Collective Action Period without overtime pay and at a fixed daily rate regardless of hours worked.  Defendants also required Plaintiffs and the Collective Action Members to share tips with Defendants' employees who did not have contact with restaurant patrons.  Throughout the entire Collective Action Period, the Defendants failed to pay Plaintiffs and the Collective Action Members for all hours worked and time and one-half their regular hourly rate for hours worked in excess of forty (40) in a week, no matter which restaurant location they worked in.  Hence, all hibachi chefs were similarly situtated with respect to Defendants' unlawful pay policies of failing to pay for all hours worked and failing to pay overtime premiums for hours worked over forty each week by paying the same daily rate no matter how many hours worked.

Any slight variations in their job duties and/or wage rates of Defendants' hibachi chefs does not change the fact that Plaintiffs and the Collective Action Members were all paid by Defendants pursuant to the same unlawful policy of failing to for all hours worked and overtime premiums. *See, e.g., Ravenell v. Avis Budget Car Rental, LLC*, 2010 U.S. Dist. LEXIS 72563, at *11-12 (E.D.N.Y. July 19, 2010) (conditionally certifying a nationwide class by identifying evidence of a common compensation policy); *see also, Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 303, 306-07 (S.D.N.Y. 1998) (Sotomayor, J.) (granting conditional certification to employees at multiple restaurant locations, who collectively held positions as waiters, porters, dishwashers, cooks, back-waiters, bartenders, runners, pizza makers, busboys, and security guards).

The claims of Plaintiffs and the Collective Action Members for unpaid wages and overtime premiums rely on the same legal theories, and any defenses to their claims would be common to all Collective Action Members.  All are also similarly affected by the question of whether Defendants' violations were "willful" as that term is defined in the FLSA.

In light of the extensive similarities between Plaintiffs and the Collective Action Members, and the lenient 'similarly situated' inquiry, conditional certification of the Collective Action is appropriate at this time.

## II.      THE ISSUANCE OF A *HOFFMAN-LAROCHE* NOTICE IS APPROPRIATE

The U.S. Supreme Court has endorsed the practice of issuing notice to inform potential opt-in plaintiffs of a pending collective action, and indeed issuance of such notice is now standard practice.  *Hoffman-LaRoche*, 493 U.S. at 170.  Notice serves the goals of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action," and prevents the possibility of "misleading communications" from the parties to potential opt-in plaintiffs.  *Id.* at 171-72; *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 335-36 (2d Cir. 1979); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010).  Indeed, once a collective action is conditionally certified, it depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *Hoffman-LaRoche*. at 170.

It is well established that district courts may authorize notice to potential opt-in plaintiffs.  *See, e.g., Braunstein*, 600 F.2d 335, 335-36 (2d Cir. 1979); *Trinidad v. Breakaway Courier Systems*, *Inc.*, 2007 U.S. Dist. LEXIS 2914, at *11 (S.D.N.Y. Jan. 12, 2007); *Sbarro*, 982 F. Supp. at 261 (citing *Hoffman-La Roche*); *Gjurovich*, 282 F. Supp. at 104.

### A.    The Proposed Notice Is Fair and Accurate

Plaintiffs' proposal for court-approved Notice is "timely, accurate, and informative." *Hoffman-LaRoche*, 493 U.S. at 172.  It provides notice of the pendency of the action and of the opportunity to opt-in.  Plaintiffs' legal claims are accurately described.  Potential opt-ins are advised that Defendants will defend against the claims and that they are not required to participate.  The Notice provides clear instructions on how to opt in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action.  *See* 29 U.S.C. § 215(a)(3).

This Court should order that notice be provided through two means.  First, as an efficient way to reach all collective action members currently employed by Defendants, the Court should order Defendants to post notice of the collective action and consent forms in a conspicuous location in both of Defendants' Edo Japanese Steakhouse locations where it can be easily seen by potential collective action members.  Courts in this Circuit and around the country have recognized posting as an efficient, non-burdensome method of notice.  *See, e.g., Jacob v. Duane Reade, Inc.*, No. 11-cv-0160, 2012 U.S. Dist. LEXIS 11053, at *29-30 (S.D.N.Y. Jan. 27, 2012) (allowing notice to be posted at all locations where collective action members work); *Ack v. Manhattan Beer Distributors, Inc.*, No. 11-cv-5582, 2012 U.S. Dist. LEXIS 67883, at *20 (E.D.N.Y. May 15, 2012) (ordering notice to be posted at Defendants' various business locations); *Malloy v. Richard Fleischman & Associates, Inc.*, No. 09 Civ. 322 (CM), 2009 U.S. Dist. LEXIS 51790, at *11 (S.D.N.Y. June 3, 2009) (requiring defendant to "post the notice in each workplace where potential collective action members are employed"); *Sherrill v. Sutherland Global Servs. Inc.,* 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) (allowing notice to be posted at defendant's places of business for 90 days and mailed to all class members); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D.Cal. 2006) (finding that posting of

notice in workplace and mailing is appropriate and not punitive); *Veliz v. Cintas Corp.*, 2007 U.S. Dist. LEXIS 24428, at *5 (N.D. Cal. Mar. 20, 2007) (citing Court order to post notice in all workplaces where similarly situated persons are employed); *Garza v. Chicago Transit Authority*, 2001 U.S. Dist. LEXIS 6132, at *10 (N.D. Ill. May 8, 2001) (ordering defendant to post notice in all its terminals); *Johnson v. American Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (finding that sending notice by mail, "posting on company bulletin boards at flight bases and publishing the notice without comment in American's The Flight Deck, are both reasonable and in accordance with prior authority").

Here, conspicuously posting Notice and consent forms at both of Defendants' Edo Japanese Steakhouse locations will effectively inform all hibachi chefs about the collective action claims.  If the Notice is posted conspicuously, the goal of ensuring that all *currently employed* hibachi chefs are aware of the lawsuit could be achieved.  Posting the Notice will help rectify any difficulties reaching potential collective action members through sending the Notice, the second form of notice Plaintiffs propose.

Plaintiffs propose that Notice and consent forms be mailed by first class mail and electronic mail to potential opt-in plaintiffs' last known addresses. *See*, *e.g.*, *Jacob v. Duane Reade, Inc.*, 2012 U.S. Dist. LEXIS 11053, at *29 (S.D.N.Y. Jan. 27, 2012); *Pippins v. KPMG LLP*, 2012 U.S. Dist. LEXIS 949, at *41 (S.D.N.Y. Jan. 3, 2012) (recognizing the need for discovery of email addresses, "given the reality of communications today"); *Raniere v. Citigroup Inc.*, _ F. Supp. 2d _, _, 2011 U.S. Dist. LEXIS 135393, at *87-88 (S.D.N.Y. Nov. 22, 2011). This is consistent with established practice under the FLSA.  *Hoffman-LaRoche*, 493 U.S. at 172; *Gjurovich*, 282 F. Supp.2d at 106-109 (court provides an exhaustive list of specific notice requirements).  The Notice should be sent to all putative plaintiffs who worked for Defendants'

during the three years proceeding the filing of the Complaint. *See, e.g.*, *Rosario v. Valentine Ave. Disc. Store, Co.*, 2011 U.S. Dist. LEXIS 126634, at \*26-27 (S.D.N.Y. Nov. 2, 2011); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011). Those members interested in participating would be required to file their consents with Plaintiffs' counsel within 60 days of receiving the form.

Plaintiffs' further propose the distribution of a "reminder" notice prior to the expiration of the opt-in period to alert potential plaintiffs that the deadline is coming due. The reminder notice promotes the broad remedial purpose of the FLSA and is particularly appropriate here, where Plaintiffs are seeking a 60-day notice period. Courts have recognized that dissemination of a reminder notice is appropriate in FLSA actions since individuals are not part of the class unless he or she opts-in and because notice is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in. *See, e.g., Morris, et al., v. Lettire Construction, Corp.*, No. 12-cv-0043, 2012 U.S. Dist. LEXIS 134860, at 23-24 (S.D.N.Y. Sept. 18, 2012) (authorizing reminder notice to be sent to prospective collective action members because notice is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in after analyzing multiple cases on the issue).

**B.** **This Court Should Order Defendants to Produce the Limited Amount of Information Necessary to Ensure Timely and Effective Notice**

Since only Defendants know the names, addresses, phone numbers (including cell phone numbers), and personal electronic mail addresses of the Collective Action Members, early exchange of a mailing list for potential opt-ins is a routine component of notice in collective actions. *Hoffman-LaRoche*, 493 U.S. at 170 (the "District Court was correct to permit discovery of names and addresses …"); *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("[c]ertainly, it is 'unlikely that Congress, having created a procedure for representative action,

would have wanted to prevent the class representative from notifying other members of the class that they had a champion'"").  Plaintiffs also request that a social security number be provided for any collective action member whose Notice is undeliverable.

Expediting this limited information exchange is particularly important because the FLSA's statute of limitations may not be tolled for particular plaintiffs until they file their "Consent to Sue" forms.  29 U.S.C. § 256(b); *Sbarro*, 982 F. Supp. at 262.    The Southern District of New York routinely oders production of this information in FLSA collective actions. *See, e.g., Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160 (JPO), 2012 U.S. Dist. LEXIS 11053, at *29 (S.D.N.Y. Jan. 27, 2012) (addresses and telephone numbers); *Diaz v S&H Bondi's Dept. Store, Inc.*, No. 10 Civ. 7676 (PGG), 2012 U.S. Dist. LEXIS 5683, at *25 (S.D.N.Y. Jan. 18, 2012) (same); *In re Deloitte & Touche, LLP Overtime Litigation*, No. 11 Civ. 2461 (RMB)(THK), 2012 U.S. Dist. LEXIS 12641, at *5-7 (S.D.N.Y. Jan. 17, 2012) (addresses, telephone numbers and e-mails); *Pippins v. KPMG, LLP*, No. 11 Civ. 0377 (CM)(JLC), 2012 U.S. Dist. LEXIS 949, at *40-43 (S.D.N.Y. Jan 3, 2012) (addresses and telephone numbers, as well as emails and social security numbers for class members whose notices are returned); *Raniere v. Citigroup Inc.*, No. 11 Civ. 2448 (RWS), 2011 U.S. Dist. LEXIS, at *87-88 (S.D.N.Y. Nov. 22, 2011) (names, last known addresses, telephone numbers (both home and mobile), and e-mail addresses); *Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 514 (S.D.N.Y. 2010) (requiring production of names, addresses, and telephone numbers, and noting that "[c]ourts in the Second Circuit have been progressively more expansive regarding the extent of employee information they will order defendants to produce in FLSA collective actions, even at the pre-certification stage"); *Delaney v. Geisha NYC, LLC,* 261 F.R.D. 55, 60 (S.D.N.Y.2009) ("names,

last known mailing address, alternate address (if any), all known telephone numbers, social security numbers, and dates of employment").

Plaintiffs are not requesting unusual or extraordinary relief.  Plaintiffs' request is limited to information clearly within the discretion of this Court to order.  Plaintiffs respectfully request that this Court order Defendants to provide the information listed above in paper and digital format, to expedite the posting and mailing of notice.

## **CONCLUSION**

For all of the foregoing reasons, this Court should issue an order that: (i) allows this case to proceed as a collective action on behalf of hibachi chefs for their FLSA claims; (ii) requires Defendants to post notice at both of Defendants' Edo Japanese Steakhouse locations and authorizes Plaintiffs to send notice to all Collective Action Members by first class mail and electronic mail; (iii) directs Defendants to produce to Plaintiffs the last known mailing addresses, phone numbers and electronic mail addresses for all current and former hibachi chefs, and social security numbers of the collective action members whose notice is undeliverable; (iv) allows Plaintiffs to mail a letter to the collective action members reminding them of the deadline to opt-in to the action; and (v) such other and further relief that the Court deems proper.

Dated: New York, New York
      November 28, 2012              PELTON & ASSOCIATES, PC

                         By:    /s/ *Brent Pelton*
                         Brent E. Pelton (BP 1055)
                         Taylor B. Graham (TG 9607)
                         111 Broadway, Suite 901
                         New York, New York 10006
                         Telephone: (212) 385-9700
                         Facsimile: (212) 385-0800

                         *Attorneys for Plaintiffs, Individually, and*
                         *on Behalf of All Other Persons Similarly Situated*